Haddix vs. Wilson.

CASE 18—PETITION ORDINARY—JUNE 12.

# Haddix vs. Wilson.

# Wilson vs. Haddix.

APPEALS FROM ESTILL CIRCUIT COURT.

1.  The money value, but not the amount, of greenbacks, tortiously taken and appropriated, may be recouped or plead as a set-off, or may be recovered by suit—the trespass being waived. (*See Eversole ·vs. Moore, ante*, 49.)

2.  Double the value of property unlawfully taken may be recovered or plead as a set-off, when the unlawful taking comes within the provisions of "An act to provide a civil remedy for injuries done by disloyal persons." (*Act of February* 22, 1864, *Myers' Sup.*, p. 1.)

3.  The act of February 22, 1864 (*Myers' Sup.*, 1), is law, enforceable by the judiciary of this State, so far as it applies to guerrillas or any predatory bands of lawless soldiers not governed by the international laws of war, and acting for their own benefit.

4.  The act of February 28, 1867, to quiet all disturbances growing out of the late rebellion, commonly called the "amnesty act" (*Sess. Acts, p.* 51), does not apply to guerrillas or other unlicensed trespassers; and if it did apply to such persons, the act would have been constitutional, so far, and so far only, as it does not attempt to deprive the wronged owner of his vested legal right, to the value of his property illegally taken from him, but would only relieve the wrong-doer of the penalty of double that value.

S. TURNER,                                        For Haddix,

CITED—

*Civil Code, sec.* 161, *and note e, Myers' Code*, 432.

1 *Bibb*, 274; *Slack vs. Price*; *Salkeld*, 622.

2 *J. J. Mar.*, 231; *Bell vs. Barnett*; 3 *J. J. Mar.*, 706.

4 *J. J. Mar.*, 80; *Wever vs. Sharp*.

4 *J. J. Mar.*, 8; *McCambell vs. Sill*.

*MSS. Opin., Dec.*, 1867; *Rhodus vs. Ogg*.

Haddix vs. Wilson.

Hardin, 150; Morrison vs. Hart.

3 Marshall, 34; Farquhar vs. Collins.

2 Dana, 269; Hana vs. Pleasants.

Sid. M. Barnes and

Isaac N. Cardwell, .                                    For Wilson,

CITED—

Act of February 22, 1864, Myers' Sup., 1, 2.

1 Chitty on Pleading, p. 100, and cases cited, also p.
200, title "Election."

Session Acts, 1863–4, pages 120, 121.

15 B. Mon., 460·; Tinsley vs. Tinsley, &c.

New York Code, 1 subsec. of sec. 160.

2 Duer (N. Y.), 642; Gleason vs. Moen.

4 E. D. Smith, 285; Lignot vs. Redding.

2 Duvall, 505; Christian Co. Ct. vs. Rankin, &c.

Civil Code, secs. 161, 156.

13 B. Mon., 404;. Hord vs. Chandler.

MSS. Opin., December, 1863; Coil vs. Howard.

1 Met., 339; Kinny vs. City of Covington.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

The parties in this case are brothers-in law and neigh-bors, of good character, residing in Breathitt county, in this State, and, during the late civil war, they espoused opposite sides of the contest, Wilson advocating the re-pression of the rebellion, and Haddix sympathizing with it, while he professed devotion to the Constitution and the Union.

In the years 1862–3–4, Breathitt county was overrun by Confederate forces and infested by guerrillas, who pro-scribed the adherents of the opposite party, and commit-ted indiscriminate depredations on them and spoliations of their property.

In May, 1864, Haddix, holding two promissory notes on Wilson—one for six hundred dollars and the other for

five hundred dollars, with a credit of one hundred dollars—demanded payment, and Wilson tendered to him six hundred dollars in United States treasury notes, called greenbacks, which he refused to accept. To enforce the payment of each of the notes, Haddix then sued Wilson in two separate actions, which were afterwards consolidated.

Wilson pleaded the tender and also a set-off for the six hundred dollars, of which, shortly after the tender of them, he had been robbed by guerrillas, at the instance and with the co-operation of Haddix, as charged in the answer; and also one hundred and thirty dollars and two horses taken from him, about three months afterwards, in the same way. The jury set off the aggregate of seven hundred and thirty dollars thus pleaded, and rendered a verdict in favor of Haddix for the balance; and the court rendering judgment accordingly, each party appealed.

The tender is altogether unavailing. Had there been no other objection to it, the amount offered was insufficient, and even that was not re-tendered in court.

On the question of the alleged robbery, and of the agency of Haddix in it, there is a large mass of conflicting testimony, most of which was irrelevant; and, whatever we might think of the preponderance of probability, the scales are too nearly equipoised to allow this court to set aside the verdict as unsustained by the evidence, except, perhaps, as to the one hundred and thirty dollars last taken.

But, on another ground, the verdict cannot stand; although, as adjudged in *Eversole vs. (Moore, p.* 49), the trespass might be waived, and the value of the property taken might be recouped by a set-off against the notes, or recovered by *indebitatus assumpsit*, yet, as this court judicially knows, the verdict and judgment set off much

more than the money value of the paper currency, be-
yond which there was no right of set-off or recovery in
any form of remedy, unless that amount could be dupli-
cated under "an act to provide a civil remedy for in-
juries done by disloyal persons." (*Myers' Supplement, p.*
1.) So far as it applies to guerrillas or any predatory
bands of lawless soldiers not governed by the interna-
tional laws of war, and acting for their own benefit,
that statute is law, enforceable by the judiciary of this
State; and, as the pleadings agree that the depredators
in this case were of that unlicensed class, any other
person, loyal or disloyal, who, in any way, co-operated
in the robbery, is legally liable, not only under the stat-
ute, but under the common law, for the value of the
property so wrongfully taken. In this respect, the chief
object of this enactment was to duplicate the value; and,
so far, it is not merely remuneratory, but punitory, and
would authorize the duplication in this case. The sub-
sequent statute of 1867, entitled "*An act to quiet all dis-
turbances growing out of the late rebellion*," and commonly
called "*the amnesty act*," does not apply to guerrillas or
other unlicensed trespassers. The first section attempts
to exonerate from legal responsibility all officers and
soldiers, of either the Federal or Confederate army, "for
any act done during the late rebellion by *compulsion* of,
*and under color* of, *military authority*."

The third section excepts from the operation of the
first section cases of unlawful taking, under color of
military authority, where the thing so taken is retained
by the captor or some person under him, or has 'been
converted to his own use; and, in all such cases only,
this section repeals so much of the former act in *Myers'
Supplement* as allows double damages. Guerrillas, and
others not acting under the color of military authority,

are therefore still liable for double the value of the property unlawfully taken by them during the war. The Legislature did not intend to relieve robbers without pretense of military authority. Had it done so, however, the act would have been constitutional so far, and only so far, as it does not attempt to deprive the wronged owner of his vested legal right to the value of his property illegally taken from him, but only relieves the wrong-doer of the *penalty* of double that value.

But the "*amnesty act*" not being applicable to this case, Wilson, if he has a right to recover of Haddix, is entitled to double damages; and, consequently, the circuit court erred in refusing so to instruct the jury; but there being no assessment of the value of the paper currency, and this court having no judicial knowledge of it, there could have been no valid judgment of duplication of it; and the record does not enable us to determine whether a duplication of the value of the paper for which the evidence may have authorized the verdict against Haddix, would have been equal to the amount of the verdict.

Consequently, there is apparent error to the prejudice of each party; and the judgment is therefore reversed on each appeal, and the cause remanded for a new trial, without any judgment for costs in this court to either party.