## McFall v. Burley Tobacco Growers' Co-operative Association.

(Decided Dec. 2, 1932.)

HELENA MAIDEN CRAIG for appellant.
ROBERT H. HAYES and H. A. SCHOBERTH for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On May 21, 1928, the appellee and plaintiff below, Burley Tobacco Growers' Co-operative Association, recovered a judgment in the Woodford circuit court against Charles D. McFall for the sum of $432.12. He appealed therefrom to this court, and executed a supersedeas bond with the appellant and defendant below, Annie B. McFall, as his surety. The judgment was affirmed on May 17, 1929, in the case of McFall v. Burley Tobacco Growers' Co-operative Association, 229 Ky. 537, 17 S. W. (2d) 432.

On October 16, 1929, this action was filed by plaintiff against the principal and surety in the supersedeas bond to recover the amount of the affirmed judgment with interest and costs. Defendant, Annie B. McFall, in her answer to plaintiff's petition, relied exclusively on a set-off of an amount for $875 which she alleged plaintiff owed her because of facts therein set out, and which were: That during the year 1927 she was the owner of a farm in Woodford county and had a tenant thereon, one O. N. Cosby, who cultivated seven acres of tobacco, one-half of which belonged to her under the terms of the lease; that it averaged 1,000 pounds per acre, or 7,000 pounds in all which Cosby, without the knowledge or consent of defendant, delivered to plaintiff at its warehouse in Lexington, Ky.; that upon receipt of notice thereof she at once notified plaintiff that

she was half owner of the tobacco, and that she demanded of it half of its proceeds, the market value of which was 25 cents per pound, her half amounting to $875, the amount of her claim; that her request was ignored, and that she had not received any amount whatever from plaintiff for her part of the tobacco, but it still owed her half its value. Plaintiff's demurrer filed thereto was sustained with leave to amend, which she did, and alleged that plaintiff was "indebted to her in the sum of $875.00 for tobacco had and received by plaintiff, which tobacco was the property of and belonged to defendant, and also of the real and actual value of $875.00," and that no part of it had been paid. A demurrer filed thereto was also sustained, and, defendant declining to plead further, judgment was rendered against her for the amount claimed in the petition, and, complaining of it, she prosecutes this appeal.

While the judgment does not contain the grounds upon which the court sustained the demurrers filed to defendant's answer and to her amendment thereto, it is evident that they were upon the theory that the claim relied on was unavailable as a counterclaim, because it did not grow out of the transaction sued on, nor was it available as a set-off because not based or arising upon "a contract, judgment or award in favor of a defendant against a plaintiff, or against him and another," as is essential to a valid off-set under the provisions of subsection 2 of section 96 of the Civil Code of Practice. Our task is to determine whether or not the court was correct in so concluding.

It is admitted that the court was correct in determining that the claim relied on by defendant in her answer was not available as a "counterclaim," since it is clear that it was disconnected from the cause of action upon which recovery was sought by plaintiff in its petition, but which is necessary to a valid counterclaim, under subsection 1 of section 96, supra, of the Civil Code of Practice. Therefore, if defendant's claim is defensively assertable at all, it must be so under subsection 2 as a set-off, which is always a claim in favor of defendant against plaintiff arising out of a contract, judgment, or award, and must be for a liquidated or determinable amount which may be ascertained by calculation from the averred facts in a pleading based on contract, express or implied. See various cases in

notes to above section of the Civil Code, and Edelen's Pleading and Practice, vol. 1, p. 297.

The doctrine and rule of practice allowing offsets was unknown to the ancient common law, and is borrowed from the doctrine of compensation of the civil law. But the rule was changed in England so as to allow a defendant the right of recoupment through the operation of a counterclaim or offset by statute of 8 Geo. II, c. 24. Prior to that time, no such rights of recoupment existed in the English practice, and the defendant could assert them in no other way than in a separate independent action against plaintiff. The doctrine and rule of practice allowing such defenses is favored by the law, since it is in furtherance of a cherished policy of the law "to avoid and prevent circuity of action and multiplicity of suits by allowing the entire controversy between the parties to be litigated and finally determined in one action, wherever this can be done with entire justice to all the parties before the court, without a violation of any of the settled rules of law or forms of procedure, and without great inconvenience in practice." 57 C. J. 372, 373, sec. 20. The text continues by saying: "These remedies (of recoupment) are favored by the courts, which have been disposed to extend to the greatest length compatible with the legal rights of the parties the doctrine of allowing matters to be settled in one suit rather than compel defendant to resort to his cross action, and which will, where possible, relax the strict rules of pleading where a right of set-off is shown. Code and statutory provisions relating to counterclaims, set-offs, or other cross demands should receive a liberal construction."

To the same effect is the text in 24 R. C. L. 829, sec. 35, which says in part: "In keeping with the policy of liberal construction of set-off and counterclaim statutes, it is generally held that where a tort may be waived, and the demand sued on as an implied contract, it may be set up as a set-off or counterclaim. Accordingly where an action ex contractu can be maintained on the wrongful taking or appropriation of the defendant's property the defendant may set up such taking or appropriation as a counterclaim against the plaintiff's liquidated demand. The right to waive a tort and sue on contract is not confined to cases where goods have been converted, but the right of the injured party

to waive tort and sue in assumpsit is extended, in many jurisdictions, to a variety of cases.''

The text is supported by a number of cases cited in note 11 thereto. In conformity therewith this court in the early case of Banton v. Hoomes' Ex'rs, 1 A. K. Marsh 19 (and which was long before the adoption of our Civil Code), held that any claim for which an action indebitatus assumpsit could be maintained was available as an offset, and at that time, though we had no Code provisions so providing, it was the practice to allow no offset to be interposed, unless it was one ex contractu and a liquidated demand. To the same effect are the cases of Bruce v. Halbert, 2 J. J. Marsh. 327; Jenkins v. Richardson, 6 J. J. Marsh. 441, 22 Am. Dec. 82; Eversole v. Moore, 3 Bush, 49; and Haddix v. Wilson, 3 Bush, 523. In the Eversole opinion the facts constituting the claim asserted by defendant therein as an offset were exactly analogous to those forming the claim of defendant herein, except they were less favorable to defendant's right to assert the claim as a set-off than are the facts of this case affecting defendant's right of offset herein. In that case the pleading asserting the offset averred that plaintiff therein prior to the filing of the action went to defendant's residence ''and, by force, took from him, and converted to his own use, horses, mules, and hogs, of a value greatly exceeding the amount claimed in the action.''

The demurrer interposed to that pleading was sustained, and on appeal to this court it was reversed; the court saying: ''And although tort cannot be set-off against contract, yet the trespass in this case may be waived, and, instead of suing for indeterminate damages arising ex delicto, an action, ex contractu, might be maintained for the value of the property converted on an implied promise to pay the value of it; consequently, indebitatus assumpsit might be maintained for that value. And that which the appellant might have recovered in such an action, she may plead as a set-off in this case, as the demands of both parties arise from contract, express or implied, to pay a certain sum in money (the value of the property, not damages), which might be recovered by each in the character in which they respectively stand and plead in this action. This conclusion does not conflict in principle with any former decision of this court. And, though the answer shows

a tortious conversion, yet its election to demand only the value of the property waived the tort and relied on implied contract, which might be enforced by indebitatus assumpsit.''

Other domestic cases holding that a litigant may waive a tort and sue in assumpsit upon an implied contract where the facts are sufficient to raise such implication are: Roberts v. Moss, 127 Ky. 657, 106 S. W. 297, 32 Ky. Law Rep. 525, 17 L. R. A. (N. S.) 280; Dennis Bros. v. Strunk, 108 S. W. 957, 32 Ky. Law Rep. 1230; Cranor Smith Lumber Co. v. Frith (Ky.) 118 S. W. 307; and Simons v. Douglas' Ex'r, 189 Ky. 644, 225 S. W. 721, 724. Such principles of the law are firmly settled and of universal recognition. But the same is also true with reference to the non-availability of a claim as a set-off, although based upon contract express or implied, if the amount claimed is unliquidated in contradistinction to being liquidated; for, if it be the former, it cannot be relied upon as a set-off, unless plaintiff is either a nonresident, or, insolvent; and which clearly appears from the cases supra and from the texts in 57 C. J. 380, sec. 29, and 24 R. C. L. 827, sec. 34. There appears to be no dissent from such declared rules of practice and which narrows the question in this case to the single one of: Whether defendant's claim as set up in her answer as amended was a liquidated or an unliquidated one within the rule allowing the one and disallowing the other to be relied on as an offset?

Aside from the conclusion that might be drawn from a process of reasoning based upon the holding of other courts and statements of textwriters, we might rely exclusively on the Eversole Case, supra, decided by this court, since, if the rule as therein declared is to be adhered to, the demurrers in this case were undoubtedly improperly sustained. However, our investigation discloses that the general principle announced in the Eversole opinion in the light of the cases and authorities supra, together with those that are to follow, demonstrate that it is the tendency of the courts to construe the right of recoupment by a defendant in the way of the assertion of a counterclaim or offset, wherever it is possible to do so, but not to conflict with the plainly declared rules of practice in the particular jurisdiction. That tendency is in furtherance of the policy of the law referred to, supra, to avoid circuity

and multiplicity of actions and to settle the rights of the parties in one action wherever it is practicable.

Hence the text in 57 C. J. 383, sec. 36, states that in such cases courts will liberally construe the pleading "to have waived the tort, if such a construction is reasonably possible. Where the facts pleaded by plaintiff would constitute an action for tort, but also constitute an action on contract, a set-off may be interposed." In the Simons Case, supra, this court, following a deduction supported by our prior opinions, held that an unliquidated claim such as to deprive one from relying on it as an offset was one in which the amount thereof "exists in opinion and requires ascertainment by a jury, and which cannot be ascertained or fixed by calculation," but, if the claim so asserted arises upon contract express or implied, and is capable of ascertainment by calculation from the facts alleged, then it is "liquidated" within the meaning of the Code provision permitting its assertion as an offset against the demands of plaintiff in his petition. In the text in 57 C. J. 432, sec. 82, it is said that: "Whether damages are liquidated or unliquidated depends primarily on the terms of the contract itself. A claim is liquidated when the amount of it has been determined; and if there is data given from which damages can be *ascertained by computation or calculation,* they are liquidated, within the meaning of the statutory requirement. * * * Although it has been said that the right to maintain indebitatus assumpsit for a claim is a test in favor of its allowance as a set-off, and not whether the demand is liquidated or unliquidated, there is authority to the effect that defendant's claim is so liquidated as to entitle him to use it as a set-off when it would support an action of indebitatus assumpsit, or for goods sold and delivered, or money had and received." (Our emphasis.) In support of that text are cited a number of cases from various courts including that of Littell v. Shockley, 4 J. J. Marsh. 245.

The facts alleged by defendant in her amended answer leave nothing remaining to fix the amount due her from plaintiff except a mere calculation. She alleged positively the amount of her tobacco converted by plaintiff, its value, and plaintiff's failure on demand and request to satisfy her claim or any part of it. By so pleading her offset she founded her claim in indebi-

tatus assumpsit and alleged facts showing plaintiff's contractual (by implied contract) liability to her in a definite sum. Text-writers state the rule to be that, inasmuch as the right of recoupment, as we have seen, is in furtherance of a cherished policy of the law, courts will, when in doubt, construe the right to exist rather than to deny it. This court did so in the Eversole Case, supra. Other courts have followed that rule, and we have found no case in this court where the direct question was involved as arising upon facts similar to those we have here in which the right to interpose the set-off was denied. It is true that in the cases of Day v. Rogers Bros. Coal Co., 216 Ky. 817, 288 S. W. 751; Stone v. Morrison, Assignee, 219 Ky. 624, 294 S. W. 179; and Merchants' Wholesale Grocery Co. v. Bond-Foley Lumber Co., 222 Ky. 320, 300 S. W. 872, the right to interpose the set-off was disallowed in each of them because the claim was clearly unliquidated and could not be rendered otherwise by calculation, or be determined from the facts alleged in the pleading setting it up, and which materially differentiates those cases from the instant one.

In view of the declared policy of the law relating to the subject as disclosed by the cases and the texts, supra, we conclude that in all cases where the pleader may assert a claim ex contractu, and where he did so in language that would support a judgment by default without the hearing of testimony to fix the amount, then the claim is one which may be relied on as a set-off, although the claim might also have been recovered in a tort action against plaintiff as for conversion. The line should be drawn and fixed somewhere, and we can conceive of no more practical or appropriate location than the one above referred to, i. e., that, when the pleading asserting the claim is so framed as to be based on a contract express or implied, and sufficient facts are alleged to permit the amount of it to be fixed by calculation so as to sustain a valid judgment by default without trial of any sort, then it becomes available as a set-off because based on contract and for a liquidated amount.

Having so concluded, it results that the court erred in sustaining the demurrer filed to the answer as amended, and the judgment is reversed, with directions to overrule the demurrer thereto and for proceedings consistent with this opinion.