## Jefferson, Noyes & Brown v. Western National Bank.

(Decided June 2, 1911.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

1. Res Judicata—A judgment of a court having jurisdiction of the subject matter and of the parties, is, as a general rule, final and conclusive, not only as to the matters actually litigated and decided therein, but also as to all matters necessarily involved in the litigation, and which might have been litigated therein.

2. Counterclaim—Defense—Whenever recoupment is sought, the party entitled to it may interpose it either as a defense, or he may bring a new or cross-action, and generally it is optional with him which course he will adopt. A defense must be presented, or it is lost; a counterclaim may be withheld under section 17, of the Code of Practice, for a separate action.

3. Matter of Defense to First Action Can Not be Made Ground for a Separate Action—Where judgment goes against the defendant, and he afterwards sues the plaintiff on a claim which he might have presented in the first suit, but did not, if the facts which he must establish to authorize his recovery are inconsistent with the facts on which the plaintiff recovered in the first action, or,

are in direct opposition to them, the former judgment is a bar. If the way to his own recovery lies through a negation of the facts alleged by the plaintiff, that negation must be made good when the facts are first set up; for afterwards he can not deny what the judgment affirms to be true.

4. Res Judicata—If the determination of a question is necessarily involved in the former judgment, it is a bar to a subsequent action, and it is immaterial whether the question was actually litigated, or not.

W. W. DAVIES for appellants.

FLEXNER, CAMPBELL & GORDON for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellants, Jefferson, Noyes & Brown, are general fire insurance agents in Louisville. In June, 1906, the Howe Manufacturing Co., of said city, was heavily indebted to the appellee, the Western National Bank. The Howe Company applied to appellants for fire insurance upon its plant and stock on hand, and asked credit for the premiums, which aggregated $734.40. Appellants refused to issue the insurance upon the credit of the Howe Company until after the officers of the bank had assured appellants that the Howe Company was financially sound and solvent, and able to pay said premiums, when, in fact, it was insolvent and unable to pay anything. Appellants alleged that they relied upon these representations, which were false and fraudulent, and so known to be by the bank at the time they were made, and were made by the bank's officers in reckless disregard of the truth or falsity of the same; and relying thereon, they issued the insurance policies and took the notes of the Howe Mfg. Co. for the premiums, aggregating $734.40 as above stated; whereupon the appellants discounted the notes to the appellee. In December, 1906, the Howe Company was adjudged a bankrupt, and said notes were filed and proved in the bankruptcy proceedings; but as nothing was paid upon the Howe Company's unsecured debts, the bank received nothing upon these notes from the trustee in bankruptcy. Thereupon the bank sued the appellants as endorsers of said notes, and on February 18, 1910, obtained a judgment against them for the full amount thereof. Execution having issued against appellants upon said judgment, they paid $983.75 on June 3, 1910, in satisfaction thereof, and on June 11, 1910, instituted this action against the bank to recover said amount,

upon the theory that they have been damaged to that extent by reason of the bank's false and fraudulent misrepresentations of the solvency of the Howe Mfg. Co., whereby it had been enabled to obtain the insurance above referred to. The lower court sustained a demurrer to the petition upon the ground that while the facts of fraud and misrepresentation relied upon would have constituted a defense to the suit on the notes, they could not have been set up by way of counter-claim under section 17 of the Code. While the petition does not allege that the judgment was obtained by default, or that the appellants did not, in that action, rely upon said fraudulent misrepresentations as a defense to the action, the case has been argued here as though the petition did state those facts, and it will be so considered upon this appeal. It is contended by appellants that the fraudulent misrepresentation of the bank constituted a counter-claim upon which a cause of action could have been maintained by the appellants; while the appellee contends that the facts, if true, constituted, at most, a mere defense to the suit upon the notes, and should have been relied upon in the former action. It is a general rule that not only all questions actually raised by the allegations of the petition, but all questions which might have been raised in that suit by any of the defendants in opposition to the relief prayed for by the plaintiff, are concluded by the judgment rendered therein. Newman's Pl. & Pr., (2 Ed.) section 508 C.

A decision of the question requires a consideration of section 17 of the Code, which reads as follows:

"A judgment obtained in an ordinary action shall not be annulled or modified by any order in an equitable action, except for a defense which arises, or is discovered after the rendition of the judgment. But such judgment does not prevent the recovery of any claim which was not, though it might have been, used as a defense by way of set-off or counter-claim in the action."

Section 96 of the Civil Code of Practice defines a counter-claim as follows:

"A counter-claim is a cause of action in favor of a defendant against a plaintiff, or against him and another, which arises out of the contract, or transactions, stated in the petition as the foundation of the plaintiff's claim, or which is connected with the subject of the action."

It is well settled that a judgment of a court having jurisdiction of the subject matter and of the parties, is, as a general rule, final and conclusive, not only as to the matters actually litigated and decided therein, but also as to all matters necessarily involved in the litigation, and which might have been litigated therein. And whenever recoupment is sought, the party entitled to it may interpose it either as a defense, or he may bring a new or cross-action, and generally it is optional with him which course he will adopt. A defense must be presented or it is lost; a counter-claim may be withheld for a separate action.

The reason for this practice was well stated by Chief Justice Church in Dunham v. Bower, 77 N. Y., 76, 33 Am. Rep., 571, as follows:

"This proceeds upon the ground that recoupment is in effect the setting off of distinct causes of action. It is sometimes difficult to draw the line between a judgment which will operate as a bar to an action for a specified claim, and one which leaves the claim outstanding to be enforced by a cross action. It depends in a great measure upon the nature of the demand litigated, the relation which the claim sought to be enforced bears to it, and the circumstances attending it. Any fact or allegation which is expressly or impliedly involved in a judgment is merged in it, and can not again be litigated. Upon this principle the so-called malpractice cases were decided. Gates v. Preston, 41 N. Y., 113; Bellinger v. Craigue, 31 Barb., 534; and which have been approved in the recent case of Blair v. Bartlett, 75 N. Y., 150, s. c. 31 Am. Rep. 455. It was held in these cases that the question of care and skill of a physician, or surgeon, is necessarily adjudicated in an action to recover compensation for the services rendered, and a judgment for such services is a bar to an action for damages, based upon a want of proper care and skill. So in Collins v. Bennett, 46 N. Y., 490, it was held that a judgment in an action to recover compensation for keeping a horse, was a bar to an action for a conversion of the horse founded upon using and driving him contrary to the agreement, upon the ground that the recovery necessarily adjudged a performance of the contract."

While the rule above announced bars all matters of mere defense from being made the basis of a second action, it does not so bar matters which constitute a counter-claim, which are expressly saved for further action by

the provisions of section 17 of the Code above quoted. The difference between the defense and a counter-claim must therefore be kept in view, and carefully distinguished. A matter of defense must be relied upon, while a counter-claim may be relied upon in the first action, although it is not necessary to be so relied upon in the first action in order to save it; it may be reserved for a future and independent action. Thus, though in an action for the price of goods sold to the defendant he might give in evidence a breach of warranty of the goods, or of a deceit in the sale of them, and so defeat the action in whole or in part, yet under the Code he is under no obligation to do so, and he may maintain his separate action for damages after having submitted to a judgment for the price. Of course, if the matter available as a counter-claim is relied upon by the defendant as a defense, and the decision is against him, it can not afterwards be asserted either as a counter-claim, or a cause of action. In the case at bar, the facts of misrepresentation on the part of the bank as to the solvency of the Howe Company were not relied upon to defeat the suit by the bank upon the notes. Can they now be made the foundation of this new action by the appellants against the appellee? If they constituted only a defense to the former action, their efficacy is barred by the judgment in the former action; if they constituted a counter-claim, they are saved by section 17 of the Code, above quoted, and may be so used. The question is not without difficulty.

In 2 Black on Judgments, section 767, the rule for distinguishing a matter of defense which must be relied upon, from a counter-claim, which need not be relied upon, but which may be subsequently asserted in another action, is formulated as follows:

"Where judgment goes against the defendant, and he afterwards sues the plaintiff on a cross-claim which he might have presented in the first suit but did not, if the facts which he must establish to authorize his recovery are inconsistent with the facts on which the plaintiff recovered in the first action, or in direct opposition to them, the former judgment is a bar. In other words, if the way to his own recovery lies through a negation of the facts alleged by the plaintiff, that negation must be made good when the facts are first set up. For afterwards he can not deny what the judgment affirms to be true."

The same doctrine may be found in 1 Freeman on Judgments, (4th Ed.) section 282.

From this language it will be seen that the rule, briefly stated, is, that if the determination of a question is necessarily involved in the former judgment, it is immaterial whether it was actually litigated, or not. The difficulty in such cases arises in determining whether the right or question presented by the second suit was necessarily involved in the determination of the first suit.

In the case at bar appellants could have presented the facts of misrepresentation and fraud now relied upon, in defense of plaintiff's action upon the notes, but they did not do so. If the claim of the appellants was necessarily involved in appellee's former case, it has been tried and can not now be retried.

The judgment in the former case established the validity of the notes and merged them into the judgment, while the effect of a judgment according to the prayer of the petition in this case would establish the invalidity of the notes. It follows, therefore, that appellant's claim was a defense to and in avoidance of appellee's claim upon the notes, and was not a counter-claim separate and independent from appellee's right of action upon the notes.

Dunham v. Bower, above quoted, was an action for damages for loss of goods by a carrier, and the defendant gave in evidence a judgment recovered by him for the freight for carrying the goods. Applying the rule in that case, Chief Justice Church said:

"The action for freight in transporting the apples adjudged that the plaintiff in that action had performed his contract, except to the extent that he was excused by the freezing of the canal. It is urged that the cause of action in this case was independent of the contract of shipment. It seems quite clear that it was a part, and a very essential part of that contract. The time of starting was made important by the parties, and a violation of the agreement in that respect caused, as it is alleged, the freezing and destruction of the property transported. If this had been shown, it would have defeated the whole cause of action before the justice of the peace, either upon the contract, or upon a quantum meruit. It would have shown that the pretended service was of no value, and after defeating that action the defendant would have been at liberty to have sued for his damages.

"If the allegations in this case are true, the defendant was not only not entitled to any freight, but the plaintiff was entitled to a judgment for the whole amount of his damages. I do not see how a right to freight and a right to damages for the destruction of the whole property caused by a violation of the shipping contract can co-exist. * * * There may be cases where the principle of recoupment would apply, but does it apply when the fact upon which it is alleged is necessarily fatal to the whole action? I think not. We must decide this case upon its own facts, and it seems to us that if the allegations of the complaint in this case are true, the defendant could have legally recovered for freight, and this whether damages ensued or not to the property. The recovery therefore adjudicated either that the defendant never made the alleged agreement, or that he had performed it. These questions were necessarily involved in that action, and are merged in the judgment."

Applying the reasoning of the foregoing language to the facts of this case, it is equally difficult to see how the bank's right to recover upon the notes, and the appellant's right to wholly defeat the notes upon the ground that appellee had fraudulently procured appellants to accept them, can co-exist. One of them is necessarily unfounded; and when one of them has been established by a judgment, the other is thereby necessarily disaffirmed.

The rule above announced has, in its application. been recognized by this court in Callahan v. Murrell, 20 Ky. L. R., 28, and in Shaw v. Milby, 23 Ky. L. R., 645, and the cases therein cited.

Appellants rely upon a class of cases of which Sherley v. Trabue, 85 Ky., 71; Commonwealth v. Barker, 126 Ky., 210; and Truesdale v. Brady, 31 Ky. L. R., 1336, are representatives. It will be seen, however, from a careful analysis of those cases, and cases like them, that in every instance the counter-claim, which was made the basis of a subsequent action, was a distinct right, which might have been asserted regardless of the existence of or suit upon the original claim, and was not dependent upon the assertion of that claim. In Sherley v. Trabue, it was held that usury paid upon a judgment might be recovered; but the right to recover usury is given by statute. (Ky. Statutes, 2219). In Truesdale v. Brady, the subsequently asserted counter-claim arose under a

separate lumber transaction between the parties; while in Commonwealth v. Barker, it was said that Barker might have asserted a claim for money paid out by him, either as a counter-claim or in a subsequent action, although that question was not before the court, and the expression was merely used by way of illustration.

In Nemethy v. Naylor, 63 How. Pr., 387, it was held that a counter-claim could not be made the subject of an independent action when it resulted from an alleged contract, the existence of which, in many of its material parts, was directly negatived by a judgment unreversed and unappealed from, given in an action between the same parties.

The real character of appellants' claim, and that it is a mere defense, appears when it is considered that there could have been no partial recovery by appellee upon the notes, and that appellee was entitled to recover the entire amount thereof, or none of it. If the matters of misrepresentations set forth in this action were true, appellee was not entitled to recover anything upon the notes. Furthermore, if the bank had not brought its suit upon the notes, appellants could not have recovered anything for the alleged misrepresentation, because their whole damage arises from the fact that they have paid the debt, which they claim they had created and lost by reason of appellee's misrepresentation. If the bank had never sued appellants upon the notes, appellants could never have been damaged; and neither could they have set up their claim until after the bank had sued them. These considerations show beyond question that appellants' claim was dependent upon appellee's claim, and was, at most, a defense to it; it did not have that independent existence which is essential to a counter-claim. If the defense had been successfully asserted in that case, it would have resulted only in the bank's failure to recover anything; the appellants, who were defendants in that action, could not there have recovered anything by way of counter-claim, because the matters of misrepresentation could have been presented as a defense only.

Hardwicke v. Young, 110 Ky., 504, is illustrative of what constitutes a defense as distinguished from a cause of action. In that case, Young brought a suit to enjoin the collection of a school tax upon the ground that his property was not taxable in the district; and after he had lost that case he brought a second suit to enjoin the

collection of the tax upon the ground that the tax had not been constitutionally levied.

In dismissing his second suit the court said:

"After a careful examination of the authorities, we have reached the conclusion that the subject matter of the litigation was appellee's liability to the tax. He undertook, in a proceeding to restrain its collection, to set up his defense against the claim. It was his duty to assert all matters which were strictly defensive. Having failed to do so, he can not now, in a subsequent suit, be allowed to assert defenses which he neglected or overlooked in the former litigation. He cannot cut and come again. There must be somewhere an end to the litigation of liabilities which have been judicially determined."

The subject matter of the former litigation was appellants' liability upon the notes, and that question having been tried, it can not be retried.

In taking this view of the case the circuit judge properly sustained the demurrer to the petition.

Judgment affirmed.