# Louisville Trust Co. v. Drewry.

(Decided Nov. 24, 1936.)

GORDON, LAURENT, OGDEN & GALPHIN for appellant.

D. A. McCANDLESS and NATHAN KAHN for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On July 8, 1932, Frank G. Drewry executed to the Louisville Trust Company his note for $10,039.62, due 60 days after date. It was a renewal note, and represented an indebtedness that had existed for a number of years. Drewry pledged to the trust company, as security upon the note, 225 shares of the common stock of

the Commonwealth Life Insurance Company, and it held as additional security a mortgage on certain real estate owned by Drewry. The note contained the following provisions relative to the trust company's right to sell the collateral upon Drewry's default:

"And in case of default at any time in the payment on demand of any such liabilities, whether due or not due, the undersigned hereby authorizes the said Company or the legal holder thereof, to sell, assign, and deliver the whole or any part of said securities or any substitutes which have been made therefor or additions thereto, or any other property at any time given into or left in the possession of said Company or the legal holder hereof by the undersigned, for safe keeping or otherwise, at any Board of Trade or at public or private sale, at the option of said Company, or of any of its officers, or of the legal holder hereof, without either advertisement or notice, which are hereby expressly waived. If such securities or property are sold at public sale, the Company, or the legal holder hereof, itself may purchase the whole or any part thereof, free from all right of redemption on the part of the undersigned, which is hereby waived and released."

The note matured September 6, 1932, and on the next day I. J. Porter, treasurer of the trust company, wrote to Drewry as follows:

"Inasmuch as you have not made satisfactory arrangements in respect to your note, it will be necessary for us to sell the collateral which is attached and to apply the proceeds as a credit to the note, and then take whatever steps are necessary to collect the balance.

"We will, therefore, offer for sale on Monday, September 19th, at 10 o'clock to the highest bidder at the Board of Trade:

"225 shares of Commonwealth Life Insurance Company stock.

"First Mortgage on property at 1361 Tyler Parkway."

The stock was sold on September 19, 1932, and purchased by the trust company for $2,250, and the mortgage was purchased by it for $100. The mortgage was

sold under the misapprehension that its sale was necessary in order to enable the trust company to enforce the mortgage lien. The note was credited with the payment of $2,350, as of September 19, 1932, by an indorsement on its back. Thereafter the trust company brought an action to recover the balance due on the note, and obtained a judgment against Drewry for the amount of the note, with interest, subject to a credit of $2,350, as of September 19, 1932. An execution was issued upon the judgment and levied upon Drewry's real estate. Before any effort was made to enforce the execution lien, Drewry obtained a loan from the Home Owners' Loan Corporation for the amount of the lien, and the trust company on January 3, 1934, accepted Home Owners' Loan Corporation bonds at their par value in satisfaction of the judgment, though they were selling at the time at 84. On April 16, 1934, Drewry made a tender to the trust company of the amount paid by it for the Commonwealth Life Insurance Company stock, and demanded the return of the stock. The trust company declined to return the stock, and thereafter Drewry filed this action for a cancellation of the sale of September 19, 1932, and a return of the stock purchased at that sale upon payment by him of the purchase price. He set out in his petition the facts concerning the sale, and alleged that the conduct and actions of the defendant in connection therewith were in bad faith, fraudulent, oppressive, and unfair, and that by reason thereof the entire transaction was void, and he prayed for the cancellation of the sale and the return to him of the stock upon the payment by him to the defendant of the sum of $2,250, with interest thereon from September 19, 1932, less the amount of dividends that defendant had collected. The trust company denied that the sale was invalid, and pleaded accord and satisfaction, res adjudicata, and ratification. The circuit court entered a judgment granting the relief sought by the plaintiff, and the defendant has appealed.

The pledge contract clothed the trust company with authority to sell the collateral on the note at either private or public sale. The trust company could purchase the securities only in the event they were disposed of at a public sale, and the correctness of the judgment, therefore, depends primarily on whether the sale at which the trust company became the purchaser was public or private. The contract provided that the sale might be

282

had without advertisement or notice, but, to constitute a public sale, it was necessary that the public be afforded some opportunity to bid on the securities. When Drewry received the notice of September 6, 1932, he tendered to the trust company a certified check for the interest on the loan, and offered to execute a renewal note, but the company declined to accept the check and demanded payment of the note. Drewry then sought to refinance the loan at a number of banks and building and loan associations, but was unsuccessful in his efforts. The depression was in an acute stage, and financial institutions were loath to extend credit to new customers. On September 9, 1932, Mr. Porter, accompanied by Mr. Hubbard Buckner, an employee of the trust company, went to the offices of the Louisville Board of Trade, which were then located on the fourth floor of the Lincoln Bank building. The Board of Trade is not an organization engaged in the business of affording facilities for trading in securities, but is a civic body organized for the purpose of advancing the commercial interests of the city of Louisville. Financial institutions as well as individuals were permitted to use its offices, usually the directors' room, for the purpose of conducting sales of securities or other property, but such sales were infrequent and were held at irregular intervals and usually after the sale had been advertised in the newspapers and notices had been posted in the building on a board provided for that purpose. When Porter and Buckner reached the Board of Trade offices, Porter requested the assistant secretary of the Board of Trade to assign him a room in which to hold the sale, and he was assigned the directors' room where the sale was conducted, no one being present except the two officers of the trust company and the assistant secretary of the Board of Trade. It is admitted that the latter was not present as a prospective bidder. On the way to the Board of Trade offices, Porter instructed Buckner to start the bidding at $10 per share for the 225 shares of Commonwealth Life Insurance Company stock, and $100 for the mortgage. Porter acted as auctioneer, and sold the insurance company stock to the trust company for $10 per share on Buckner's bid. The evidence shows that the fair market value of the stock at that time was at least $25 per share. The appellant contends that $25 per share represented the market value of the stock only when offered in small lots, and that the sale of a

block of 225 shares would have materially depressed the market, but this is mere supposition on its part.

The facts recited above convince us that the sale was in no sense a public one. It was not held at a public place where securities were customarily bought and sold, and no one was given any information as to the time and place of the sale except Drewry, who had the right to assume that appellant would not become the purchaser except at a public sale as the pledge contract provided. Although the contract provided that the sale might be made without advertisement or notice, it was certainly contemplated that persons interested in that class of securities would in some way have their attention called to the sale. In making a sale of this character, the pledgee must exercise reasonable skill and diligence in order to get the value of the property, and if the sale is not fairly made it will be set aside. Perkins v. Applegate, 85 S. W. 723, 27 Ky. Law Rep. 522; Dibert v. Wernicke (C. C. A.) 214 F. 673; Turner v. Metropolitan Trust Co. (C. C. A.) 207 F. 495; Passaic National Bank & Trust Co. v. Owens, 111 N. J. Eq. 486, 162 A. 879; Annotation in 76 A. L. R. 705.

In order to justify its action in selling the pledged property to a third person at a private sale, a procedure permitted by the pledge contract, it would be necessary for appellant to show that an honest effort had been made to obtain the fair market value of the stock. Since the appellant purchased the stock at a private sale, the circuit court properly canceled the sale unless the appellee had forfeited his right to this remedy. It is insisted that he is precluded from questioning the validity of the sale because he ratified it by accepting the credit and compromising the balance due. As soon as he was notified of the sale and that the trust company had purchased the stock at $10 per share, he wrote to the president of the trust company protesting vehemently against the procedure that had been followed. His letter reads in part as follows:

"I received today a letter of your company dated Sept. 19, 1932, and a letter of your attorney, Mr. Crawford, dated Sept. 20, 1932, notifying me that your company had sold to itself 225 shares of the capital stock of the Commonwealth Life Insurance Co. at $10.00 a share and the mortgage for $100.00.

"This in fact was not a sale but a gift, as any stockholder knows that this stock is worth more than $50.00 per share. Pardon me, but the attempted sale is so unfair and so disproportionate to the true value of the stock that I am sure no Court will tolerate it and I do not think that you would approve of it. I request that this transaction be immediately set aside and that you give me a chance."

He received no answer to his letter, and he then consulted Mr. Darwin W. Johnson, president of the Commonwealth Life Insurance Company and a director of the Louisville Trust Company. Mr. Johnson told some of the officers and directors of the trust company that the company had purchased the 225 shares of Commonwealth Life Insurance Company stock for less than its value and that Drewry should be allowed a higher price for it, but they declined to make any concessions. Drewry insisted that the sale was invalid and that he was not bound by it, and he maintained that attitude consistently until this action was instituted. When the trust company filed an action to collect the balance due on the note, Drewry filed an answer in which he sought no affirmative relief, but expressly reserved "all causes of action and counterclaims he may have against plaintiff." No proof was introduced as to the validity of the sale, and the only proof offered in that respect was objected to by the trust company, and its objection was sustained. The appellant was successful in preventing an inquiry in that action concerning the validity of the sale, and its plea of res adjudicata cannot be sustained. Douglas v. Troxell, 181 Ky. 623, 205 S. W. 683, and Moore v. Gas & Electric Shop, 216 Ky. 530, 287 S. W. 979, are cited by appellant in support of its contention that the judgment in the action to collect the balance due on the note is a bar to the present action and that the matter alleged in the petition is res adjudicata, but in each of those cases the identical matter pleaded in the second suit had been litigated in a former action. Here, no issue was made as to the validity of the sale, and no proof was heard on that question. Section 17 of the Civil Code of Practice reads:

"A judgment obtained in an ordinary action shall not be annulled or modified by any order in an equitable action, except for a defense which arises or is discovered after rendition of the judg-

ment. But such judgment does not prevent the recovery of any claim which was not, though it might have been, used as a defense by way of set-off or counter claim in the action.''

Drewry might have relied upon his claim that the sale of the insurance stock was invalid as a defense by way of counterclaim in the action on the note, but he elected to maintain a separate action on his claim as he had a right to do. Moore v. Gas & Electric Shop, supra; Bishop's Adm'r v. Bishop, 162 Ky. 769, 173 S. W. 130; Jefferson, Noyes & Brown v. Western National Bank, 144 Ky. 62, 138 S. W. 308; Truesdale v. Brady, 105 S. W. 122, 31 Ky. Law Rep. 1336; Com. v. Barker, 126 Ky. 200, 103 S. W. 303, 31 Ky. Law Rep. 648.

There is no evidence which tends to show that the settlement which satisfied the judgment obtained by the trust company in its action on the note was an accord and satisfaction of Drewry's stock claim, or that he ratified the sale. On the contrary, the evidence shows conclusively that Drewry insisted from the time the sale was made until this action was brought that the sale was invalid and should be set aside. Appellant's officers knew what Drewry's attitude was in this respect, and that Drewry never at any time agreed that the settlement subsequent to the judgment should constitute an accord and satisfaction in regard to his claim concerning the insurance company stock.

The judgment is affirmed.