**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0373n.06

No. 19-5510

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| HEARTLAND MATERIALS, INC.; WILLIAM R. FRAZER, LLC; SOUTHERN AGGREGATE DISTRIBUTORS, INC., | ) ) ) | **FILED**<br>Jun 23, 2020<br>DEBORAH S. HUNT, Clerk |
| **Plaintiffs-Appellees,** | ) ) |  |
| v. | ) ) |  |
| WARREN PAVING, INC.; SLATS LUCAS, LLC, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF |
| **Defendants-Appellants.** | ) ) | KENTUCKY |

OPINION

**BEFORE: NORRIS, MOORE, and DONALD, Circuit Judges.**

**ALAN E. NORRIS, Circuit Judge.** In 2014, Warren Paving, Inc. and Slats Lucas, LLC filed suit against Heartland Materials, Inc. and others asking the court to declare a 2004 contract void. Under the disputed contract, Warren Paving was required to pay royalties to Heartland based on the volume of stone extracted from a quarry that Heartland helped Warren acquire. The district court dismissed the suit in favor of Heartland because it was barred by Kentucky's five-year statute of limitations, and this court affirmed. Subsequently, Warren Paving and Slats Lucas simply stopped paying royalties, causing Heartland to sue to enforce the contract. As defenses to Heartland's suit, Warren Paving and Slats Lucas raised substantially the same legal theories as the claims in their affirmative lawsuit. Common sense would suggest that such a transparent effort to evade the statute of limitations should fail. Kentucky law confirms this common-sense conclusion.

The district court again granted summary judgment in favor of Heartland and, for the reasons that follow, we affirm.

**I.**

In 2003, Warren Paving began looking for an opportunity to purchase and operate a limestone quarry. Heartland assisted in the search, eventually identifying a suitable tract of land in Livingston County, Kentucky (the "Property"). Warren Paving gave Heartland a check for $5,000 to secure an option to buy the Property, and near the end of the option period gave Heartland another check for $5,000 to extend the option. Heartland purchased both the option and extension in its own name. Warren Paving claims that it did not know the options were in Heartland's name, while Heartland claims that Warren Paving did know and wanted to keep its plans to develop a quarry confidential.

Warren Paving decided to purchase the Property. Heartland agreed to assign its option to purchase the Property to Warren Paving, retaining for itself certain royalties. In September 2004, the parties executed an assignment contract with retained royalties (the "Contract"). Under the Contract, Warren Paving was required to advance $300,000 to Heartland based on the first 750,000 tons of limestone produced, then a second $300,000 payment for the subsequent 750,000 tons. Thereafter, Warren Paving was required to pay Heartland ongoing royalties of $0.40 per ton of limestone mined and loaded for transport.

Warren Paving claims that even though it found these terms to be exorbitant, it was forced to agree to the Contract because the Property was desirable, and Heartland had threatened that another buyer was also interested in the property. Heartland next obtained certain required permits and other approvals for Warren Paving so that Warren Paving could begin mining operations. In

2007, Warren Paving transferred ownership of the Property to Slats Lucas but leased the property back and continued to make the royalty payments to Heartland on behalf of Slats Lucas.

In July 2009, Heartland assigned one third of its interest in receiving royalties from Warren Paving to Walt Gaylord, a principal of Heartland. Gaylord then sold those interests to Slats Lucas, effectively reducing by one-third the royalties to be paid going forward. In August 2010, Heartland assigned its remaining rights to the royalties, with half going to William R. Frazer, LLC and half going to Southern Aggregate Distributors, Inc.

In its 2014 suit, Warren Paving asserted that the Contract should be void because the royalty payments to Heartland were effectively real estate commissions and at the time the Contract was executed Heartland did not have a real estate brokerage license as required under Kentucky law. Warren argued that Heartland acted in the capacity of a real estate broker for its part in Warren purchasing the land. Warren also included claims based on mistake of fact, breach of fiduciary duties, fraud and intentional misrepresentation, restitution, assumpsit, unjust enrichment, and constructive trust. The district court thoroughly examined the claims and determined that each was subject to a five-year statute of limitations under Kentucky law, and therefore granted Heartland's motion to dismiss.[1] Warren Paving appealed, but in July 2016 this court confirmed the applicable statute of limitations and affirmed the court's dismissal.[2]

Shortly after this court issued its order, Warren Paving and Slats Lucas stopped paying royalties under the Contract. In September 2016, Heartland Materials, William R. Frazer, LLC, and Southern Aggregate Distribution Inc. filed suit for breach of contract. In response, Warren

---

[1] *Warren Paving, Inc. v. Heartland Materials, Inc.*, No. 5:14-CV-149-R, 2015 WL 269204, at *5 (W.D. Ky. Jan. 21, 2015).

[2] *Warren Paving, Inc. v. Heartland Materials, Inc.*, No. 15-6052, 2016 U.S. App. LEXIS 24301, at *6 (6th Cir. July 6, 2016).

Paving and Slats Lucas asserted in defense that they do not owe royalties and the Contract is unenforceable because (1) the royalty payments are essentially brokerage fees and therefore violate Kentucky brokerage licensure laws, (2) the contract is void ab initio, (3) mistake of fact, (4) Heartland breached its fiduciary duties of loyalty and good faith, (5) the Contract was procured through fraud, breach of fiduciary duties, or material mistake of fact, and (6) Heartland has unclean hands.[3] Warren Paving and Slats Lucas also contend that they are entitled to set-off or recoupment.

The district court noted the symmetry between the claims by Warren Paving and Slats Lucas in the prior litigation and their defenses in the current litigation, holding that the relevant defenses were stricken because each was barred by the statute of limitations in the prior suit and so is barred in this suit under the doctrine of issue preclusion. The court granted summary judgment in favor of the plaintiff, Heartland, and granted a declaratory judgment clarifying that Warren Paving and Slats Lucas are contractually obligated to pay ongoing royalties in accordance with the Contract.

**II.**

We review de novo the district court's grant of summary judgment, construing the facts in the light most favorable to Warren Paving and Slats Lucas. *See Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018).

The district court held that Warren Paving and Slats Lucas were "barred from asserting most of their affirmative defenses" due to issue preclusion. *Heartland Materials, Inc. v. Warren Paving, Inc.*, No. 5:16-CV-00146-TBR, 2018 WL 2324075, at *9 (W.D. Ky. May 22, 2018). The idea of issue preclusion "is straightforward: Once a court has decided an issue, it is 'forever settled

---

[3] Heartland claimed also that defendants miscalculated and underpaid the prior royalty payments. The district court denied summary judgment on that claim and subsequently Heartland dismissed it. That claim is not part of the appeal.

as between the parties.'" *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015) (quoting *Baldwin v. Iowa State Traveling Men's Assn.*, 283 U.S. 522, 525 (1931)). More specifically, "issue preclusion, bars 'successive litigation of *an issue of fact or law* actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'" *Ark. Coals, Inc. v. Lawson*, 739 F.3d 309, 320 (6th Cir. 2014) (emphasis added) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008)). And a dismissal based on statute-of-limitations grounds is a judgment on the merits, barring exceptions inapplicable here. Fed. R. Civ. P. 41(b); *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995) ("The rules of finality, both statutory and judge made, treat a dismissal on statute-of-limitations grounds . . . as a judgment on the merits.").

"[W]hen a federal court exercises diversity jurisdiction over a state law claim, federal common law governs the issue preclusion analysis." *In re Berge*, 953 F.3d 907, 916 (6th Cir. 2020) (citing *Semtek Int'l v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)). In turn, "federal preclusion law directs courts to apply 'the law that would be applied by state courts in the State in which the federal diversity court sits,' so long as the state rule is not 'incompatible with federal interests.'" *Id.* at 917 (*quoting Semtek Int'l*, 531 U.S. at 508-09); *see also Taylor*, 553 U.S. at 891 n.4 ("For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits.") (citation omitted).

Kentucky law is compatible with federal interests, and so Kentucky law guides our preclusion analysis. "Issue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action." *Yeoman v. Commonwealth*, 983 S.W.2d 459, 465 (Ky. 1998). Kentucky issue preclusion requires five elements: "(1) at least one party to be bound in the second case must have been a party in the first case; (2) 'the issue in the second case must be the

same as the issue in the first case'; (3) 'the issue must have been actually litigated'; (4) 'the issue was actually decided in that action'; and (5) 'the decision on the issue in the prior action must have been necessary to the court's judgment' and adverse to the party to be bound." *Miller v. Admin. Office of Courts*, 361 S.W.3d 867, 872 (Ky. 2011) (quoting *Yeoman*, 983 S.W.2d at 465).

Appellants maintain that the royalty provision in the Contract is invalid and unenforceable because Heartland's involvement in procuring the property was tantamount to acting as a real estate broker without a license, and therefore the royalty payments are functionally equivalent to unlawful real estate commissions. In the prior litigation, the issue of Heartland acting as an unlicensed broker was raised and rejected as time-barred, yet appellants argue that the issue decided in the prior litigation—whether the Contract was enforceable *as a whole*—is distinct from the issue of whether the *royalty provision* is enforceable. But the key issue in each of appellants' arguments is whether Kentucky's real estate statute precludes Heartland from collecting royalties under the Contract. And that issue was resolved in the prior litigation. The district court explained:

> The distinction Defendants attempt to make is a distinction without a difference for issue preclusion purposes. In the prior suit, Defendants alleged that Heartland engaged in real estate brokerage without a license in violation of KRS § 324.020(2), which provides that "No person shall practice real estate brokerage with respect to real estate located in this state unless . . . (a) The person holds a license to practice real estate brokerage under this chapter." Ky. Rev. Stat. Ann. § 324.020(2)(a). Defendants claimed, therefore, that "Heartland was prohibited from . . . obtaining the consideration it negotiated in the Contract for Assignment." Accordingly, Defendants asserted that the Assignment Contract was "void" and that "Defendants are not entitled to any payments under the Contract." In dismissing that claim, this Court explained that, "Plaintiffs are suing based on a statutory violation, Heartland's failure to possess a real estate license. Without ruling on whether the statute was violated in this case, the proper statute of limitations to apply is [the five year statute of limitations in] KRS § 413.120(2)." *Warren Paving*, 2015 WL 269204, at *4. Applying that limitations period, the Court dismissed the claim.
>
> Here, the issue is identical. Defendants assert in their third defense that, because "neither Heartland nor its officers were licensed real estate brokers under Kentucky law[,] [t]he royalties which Plaintiffs seek . . . are not legally owed." Once again, then, the issue is the violation of KRS § 324.020(2), which the Court

has already determined is time-barred by the five-year statute of limitations codified in KRS § 413.120(2). "The 'identity of issues' element requires that 'the key issue in both cases is the same . . . .'" *Georgia-Pac.*, 701 F.3d at 1098 (quoting *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 908–09 (6th Cir. 2001)). Accordingly, "[w]here a litigant brings repeated actions based upon the *same operative facts*, issue preclusion may still properly apply despite *a change in legal theory*." *Id.* (citing *Randles v. Gregart*, 965 F.2d 90, 93 (6th Cir. 1992)). The core issue in both instances is the allegation that Plaintiffs are not entitled to royalty payments due to a violation of KRS § 324.020(2). As Sixth Circuit precedent makes clear, simply repackaging one legal theory, (voidness of a contract due to a statutory violation), into another, (unenforceability of a contract provision due to a statutory violation), is insufficient to avoid issue preclusion.

Whether Defendants use the phrase "void" or "unenforceable" in seeking to invalidate the royalty provision does not change the fact that this *issue* was already litigated and decided on the merits in the prior lawsuit. Issue preclusion "bars the relitigation of *issues*, regardless of the nature of the legal claims." *W.J. O'Neil*, 700 F. App'x at 490 (emphasis added). Because the determination of this issue was necessary to the prior judgment and because Defendants likewise had a full and fair opportunity to litigate this issue in the prior case, Defendants [brokerage license] defense is also barred under the doctrine of issue preclusion.

*Heartland Materials, Inc.*, 2018 WL 2324075, at *11–12 (internal citations to the record omitted).

It is true that the district court in the prior litigation did not decide whether Heartland's conduct violated the real estate brokerage license requirement. Heartland still maintains that its role in the real estate transaction did not require it to be licensed as a broker,[4] but more importantly that specific allegation need not be resolved. The issue as to whether the *alleged* violation of the real estate brokerage license would preclude Heartland's collecting royalties under the Contract was wholly rejected—on the merits—in the original suit due to the statute of limitations, and in this suit due to issue preclusion.

Appellants point out that "Kentucky law makes clear that a party may attack the formation of a contract in a separate action after a court interprets the contract." *Ventas, Inc. v. Health Care*

---

[4] Heartland argues that it purchased the option for itself, and then sold the option to Warren Paving, and Ky. Rev. Stat. Ann. § 324.020 provides an exception to the real estate brokerage license requirement when a party deals in property that it owns. The district court did not analyze whether this exception applies to the disputed transaction, and we likewise need not do so here.

*Prop. Inv'rs, Inc.*, 635 F. Supp. 2d 612, 629–30 (W.D. Ky. 2009). But that does not help the appellants, because the two issues in *Ventas* were entirely separate for issue preclusion purposes. In *Ventas*, a Canadian court had previously construed a specific term in a contract. *Id.* at 627. The *Ventas* court permitted a party to later challenge the formation of the contract as a whole, based on an argument entirely unrelated to the term previously construed. *Id.* at 630. In the instant case, the very nature of the prior claim was that the Contract to pay royalties was not enforceable because Heartland was not a licensed real estate broker. And the current claim is that the specific royalty provision in the Contract is not enforceable for the exact same reason—that Heartland was not a licensed broker. We agree with the district court that these two issues are the same for issue preclusion purposes. The other elements of issue preclusion are uncontested.

Appellants add the legal theory of set-off and recoupment as a defense to Heartland's suit to enforce the Contract. "Recoupment allows a defendant to defend against a claim by asserting—up to the amount of the claim—the defendant's own claim against the plaintiff growing out of the same transaction." *RL BB Acquisition, LLC v. Bridgemill Commons Dev. Grp., LLC*, 754 F.3d 380, 387 (6th Cir. 2014) (quotation omitted). Appellants correctly note that "[r]ecoupment claims are generally not barred by a statute of limitations so long as the main action is timely." *Id.* (quoting *Reiter v. Cooper*, 507 U.S. 258, 264 (1993)). This makes sense because once litigation is properly before a court, it would be unfair for the court to rule "without consideration of all the issues in the case." *Id.* (quoting *United States v. W. Pac. R.R.*, 352 U.S. 59, 72 (1956)). But therein lies the problem for appellants. Their defense of recoupment does not raise a new issue. They seek set-off and recoupment of the contractual amounts paid to Heartland based solely on the same issue raised and rejected in the earlier suit: the contention that Heartland did not have a real estate broker's license and therefore is not entitled to receive royalties under the Contract. Where a new claim is

"based upon the same operative facts, issue preclusion may still properly apply despite a change in legal theory." *Georgia-Pac. Consumer Prod. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012) (citing *Randles v. Gregart*, 965 F.2d 90, 93 (6th Cir.1992)). Here, appellants' set-off and recoupment claim was properly rejected by the district court because it is premised solely on defenses already rejected as time barred and simply seeks to relitigate the same issue under a new legal theory.[5]

Finally, appellants cite several cases for the principle that an invalid contract cannot then be enforced through estoppel. But that is not what happened here. The parties entered into a contract in 2004, and then Warren Paving and Slats Lucas decided in 2014 to object to that contract because Heartland did not have a real estate broker's license. Assuming for the sake of argument that Heartland *should* have been licensed in order to purchase the real estate option in its own name and then assign it, Warren Paving and Slats Lucas waited ten years to object, and their objection was subject to a five-year statute of limitations. Ultimately, that is why the contract is still in force, not because of estoppel. And because that earlier decision resolved on the merits the issue of whether Heartland's failure to hold a real estate broker's license precludes Heartland from receiving royalties under the Contract, all of appellants' subsequent efforts to relitigate the exact same underlying broker's-license issue—even under the new legal theory of set-off and recoupment—are barred under the doctrine of issue preclusion. The district court did not err by

---

[5] The dissent suggests that the key issue decided in the prior litigation was limited to the statute of limitations. But that statement of the issue is too narrow. The issue was whether Heartland's failure to hold a real estate brokerage license prevents it from collecting royalties under the contract. Heartland prevailed on that issue *because of* the statute of limitations, but that is a decision on the merits. *See* Fed. R. Civ. P. 41(b); *Plaut*, 514 U.S. at 228. With the real estate license issue decided on the merits, the doctrine of issue preclusion can and should apply to prevent Warren from repackaging that same issue as a defense or counterclaim. To hold otherwise would effectively allow Warren to challenge the contract more than ten years after its formation, undermining Kentucky's five-year statute of limitations.

rejecting the defenses and claims offered by Warren Paving and Slats Lucas, and holding that they are required to pay the royalties required by the Contract.

The district court provided an alternative analysis for its holding, based on *City of Saint Paul, Alaska v. Evans*, 344 F.3d 1029 (9th Cir. 2003). In *Evans*, the court looked beyond who *filed* a claim and instead considered which party was the *aggressor* in an action to discern "a realistic assessment of the parties' litigation posture." *Id.* at 1035. The goal was to prevent a party from employing "jurisdictional jujitsu" by inviting claims for the purpose of offering defenses that otherwise would be time-barred if raised as claims. *Id.* at 1031. The district court cited *Evans* and other cases to support its alternative holding that Warren Paving and Slats Lucas disturbed the equilibrium among the parties and were the aggressors in this litigation, and under *Evans* they cannot provoke Heartland to file suit for the purpose of raising their time-barred claims as defenses. *Heartland Materials, Inc.*, 2018 WL 2324075, at \*6–8 (collecting cases).

As the district court noted, the Sixth Circuit has not addressed this specific issue. *Id.* at \*8. The district court's analysis is well reasoned and persuasive. But because this case fits squarely within the doctrine of issue preclusion, we affirm on that basis and leave to a later date whether the *Evans* rule should be adopted in the Sixth Circuit.

### III.

The judgment of the district court is **affirmed**.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** Like the district court, the majority concludes that issue preclusion applies because Defendants-Appellants Warren Paving, Inc. and Slats Lucas, LLC ("Warren") raise the same argument as a defense in this case, brought by Plaintiffs-Appellees Heartland Materials, Inc. et al., ("Heartland"), as Warren did in a previous case in which Warren sought a declaratory judgment against Heartland. However, careful application of the issue preclusion test demonstrates that although Warren raises substantially the same overall argument, that argument was not the issue decided in the earlier case. Therefore, I would reverse and remand the case.

Under Kentucky law, issue preclusion applies when (1) "the issue in the second case" is "the same as the issue in the first case," (2) the issue was "actually litigated" in the first case, (3) "the issue was actually decided" in the prior litigation, and (4) "the decision on the issue in the prior action" was "necessary to the court's judgment." *Yeoman v. Commonwealth, Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998). Additionally, "at least one party to be bound in the second case must have been a party in the first case." *Miller v. Admin. Office of the Courts*, 361 S.W.3d 867, 872 (Ky. 2011).[1] To determine whether the issues in two cases are identical, courts may consider, among other things, not only whether the parties put forth the same arguments, but also whether the court's resolution of an argument "involve[s the] application of the same rule of law as that involved in the prior proceeding." Restatement (Second) of Judgments § 27 cmt. c (1982).

Whether issue preclusion applies here is a tricky matter. In Warren's affirmative suit in 2014, Warren as plaintiff sought a declaratory judgment that the assignment contract was void and

---

[1] The requirements for federal issue preclusion are nearly identical: "(1) the question in this case is the same as the one raised in the earlier litigation; (2) the answer given in the earlier litigation was necessary to the decision; (3) that decision was a final judgment on the merits; and (4) the affected party had a 'full and fair opportunity' to litigate the issue in the prior litigation." *United States v. United Techs. Corp.*, 782 F.3d 718, 725 (6th Cir. 2015) (citing *Kosinski v. Comm'r*, 541 F.3d 671, 675 (6th Cir. 2008)).

that the "Defendants are not entitled to any payments under the Contract for Assignment." *Warren Paving, Inc. v. Heartland Materials, Inc.*, No. 5:14-cv-00149-TBR, R. 1 (Compl. at ¶ 62) (Page ID #9).[2]  In support of this claim, Warren argued that the entire contract must be void as against public policy because Heartland lacked a real estate broker's license in contravention of a Kentucky statute. *Warren Paving, Inc. v. Heartland Materials, Inc.*, No. 5:14-CV-149-R, 2015 WL 269204, at *3 (W.D. Ky. Jan. 21, 2015).  "Without ruling on whether the statute was violated in this case," the district court concluded that the claim was barred by the five-year statute of limitations. *Id.* at *4.  In this current action, Heartland as plaintiff argues that Warren has been in breach of the contract since 2016 by failing to pay royalties as required by the contract.  R. 1 (Compl. at ¶ 45) (Page ID #13); *see* Majority Op. at 4 n.3.  In response, Warren asserts that the fees are not owed as a matter of law because Heartland lacks a brokerage license and that "Defendants are entitled to set-off or recoupment as to any amounts claimed by Plaintiffs."  R. 10 (Answer at 10) (Page ID #121).  The district court here reasoned that "the issue is identical" to the issue decided in the first case, and thus issue preclusion applies, meaning that Warren's defense in this case is time-barred.  *Heartland Materials, Inc. v. Warren Paving, Inc.*, No. 5:16-CV-00146-TBR, at *11–12 (W.D. Ky. May 22, 2018).

In both cases, Warren argues that the contract, or a provision of it, is void as against Kentucky public policy on the ground that the royalty provision violates the Kentucky brokerage-license statute.  But the only issue that was decided in the first case was that Warren's declaratory judgment claim seeking to invalidate the contract based on the brokerage-license statute was time-barred.  Therefore, it is incorrect to conclude that the second case involves the same issue that was decided in the first case simply because Warren raises the same brokerage-license argument

---

[2] Unless noted otherwise, record citations are to the lower court docket in this case, No. 5:16-CV-146-TBR.

against the contract. The sole possible basis for issue preclusion in this case is that Warren's defense to Heartland's claim for royalties starting in 2016 raises the same statute-of-limitations issue as was resolved by the district court on Warren's declaratory judgment claim in the first case. We cannot resolve whether the earlier determination on the statute of limitations applies to this new case without turning to the law regarding the application of statutes of limitations to defenses.

In Kentucky, statutes of limitations are generally "not applicable to defenses . . . . Thus, so long as the courts will hear the plaintiff's case, time will not bar the defense which might be urged thereto and which grew out of the transaction connected with the plaintiff's claim." *Liter v. Hoagland*, 204 S.W.2d 219, 220 (Ky. 1947). And recoupment and setoff are generally available as defenses to parties in a contract dispute, despite any statute of limitations. *See, e.g.*, *McFall v. Burley Tobacco Growers' Coop. Ass'n*, 54 S.W.2d 922, 923–24 (Ky. 1932) (addressing setoff and recoupment); *Jefferson, Noyes, & Brown v. W. Nat'l Bank*, 138 S.W. 308, 310 (Ky. 1911) (addressing only recoupment). The Supreme Court has noted as much, stating that "recoupment is in the nature of a defense . . . . Such a defense is never barred by the statute of limitations so long as the main action itself is timely." *Bull v. United States*, 295 U.S. 247, 262 (1935) (footnote omitted); *see also Desjardins v. Desjardins*, 193 F. Supp. 210, 215 (E.D. Ky. 1961). Importantly, recoupment may be brought as a defense or a counterclaim, "and generally it is optional with [the party] which course he will adopt." *Hansford v. Comm. Credit Co.*, 57 S.W.2d 27, 31 (Ky. 1932); *Jefferson*, 138 S.W. at 310. However, "if [a] counterclaim was barred by [a statute of] limitation at the time it was pleaded, it could not be invoked 'to affirmatively recover damages.'" *Armstrong v. Logsdon*, 469 S.W.2d 342, 342–43 (Ky. 1971) (quotation in original). A counterclaim will also be barred if it raises other "assertions of affirmative relief." *Liter*, 204 S.W.2d at 220–21 (allowing the "defense of payment"). This is consistent with Supreme Court precedent that when a party is

not seeking "affirmative recovery," but "only to have adjudicated questions raised by way of defense," the statute of limitations is no bar to defenses because statutes of limitations "are aimed at lawsuits, not at the consideration of particular issues in lawsuits." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 72–73 (1956).

Warren's defense has two parts. First, "[t]he royalties which Plaintiffs seek in this lawsuit are tantamount to a 'brokerage fee' or real estate commission. As such, they are not legally owed." R. 10 (Answer at 10) (Page ID #121). Second, "Defendants are entitled to set-off or recoupment as to any amounts claimed by Plaintiffs." *Id.* At this stage, Heartland claims damages from Warren's failure to pay the royalties since 2016, and Warren does not seek affirmatively to recover damages; Warren seeks only to defend against the collection of the unpaid royalties from 2016 on or to reduce the amount of unpaid royalties owed through recoupment and/or setoff. *See Institutional Labor Advisors, Inc. v. Allied Res., Inc.*, No. 4:12-CV-00044-JHM, 2014 WL 4211196, at *22 (W.D. Ky. Aug. 25, 2014) (concluding that a defense was "a counterclaim in disguise" in part because the defendant sought damages related to that defense, as well as legal fees). Warren also does not seek a sweeping declaration as to the illegality of the royalty provision or contract. Rather, Warren disputes only that Heartland may enforce collection under the royalty provision as to the alleged 2016 breach. R. 54-1 (Warren's Mot. for Summ. J. at 15–17) (Page ID #522–24); R. 40 (Response to Heartland's Mot. for Summ. J. at 5) (Page ID #395). As *Western Pacific* sets forth, the fact that Warren's affirmative claim in the first action seeking declaratory relief relied on the brokerage-license issue that is raised in Warren's defense here is not the dispositive question; the key is whether Warren seeks affirmative relief through its defense. Accordingly, the statute of limitations does not apply to Warren's defense. The district court's

prior decision on the issue of the statute of limitations is thus not entitled to issue preclusive effect in this context.

The majority acknowledges that recoupment defenses generally are not barred by statutes of limitations and in doing so relies on *RL BB Acquisition, LLC v. Bridgemill Commons Development Group*, *LLC*, 754 F.3d 380, 387 (6th Cir. 2014). Majority Op. at 8. In *RL BB*, we explained that "[r]ecoupment claims are generally not barred by a statute of limitations so long as the main action is timely." 754 F.3d at 387 (quoting *Reiter v. Cooper*, 507 U.S. 258, 264 (1993)). This is consistent with Kentucky law as described above. We concluded in *RL BB* that this rule is sensible because "it would be incongruous to hold that once a lawsuit is properly before the court, [a] decision must be made without consideration of all the issues in the case and without the benefit of all the applicable law." *Id.* (quoting *W. Pac.*, 352 U.S. at 72, 77). Although the majority recognizes the rule in *RL BB* that recoupment defenses are not barred by statutes of limitations, it concludes that Warren's recoupment defense is in fact barred by the statute of limitations based on issue preclusion because Warren's "defense of recoupment does not raise a new issue." Majority Op. at 8. The majority conflates the issue decided in the first case, whether the statute of limitations applied to Warren's affirmative declaratory judgment claim, with the brokerage-license issue, which was not decided in the first case. Warren's brokerage-license defense raises a new issue—whether Warren's *defense* is time barred, which requires evaluating whether the defense seeks affirmative relief.

As explained above, Warren first filed suit against Heartland, seeking a declaratory judgment that the assignment contract was void as against public policy because Heartland allegedly lacked the brokerage license required by statute. The district court rejected this claim solely because it was time-barred. Later, in 2016, Warren stopped paying royalties and Heartland

15

brought the current action for contractual breach. Warren raised the defense that Heartland could not collect the royalties Warren had allegedly failed to pay since 2016 because the royalty provision is void or alternatively, that Warren is entitled to recoupment and setoff of those unpaid royalties. Warren relied on the brokerage-license argument to support this defense. In the first case, the district court decided that Warren's declaratory judgment claim was time-barred, not whether Warren's brokerage-license argument is correct. If the district court had rejected Warren's brokerage-license argument on the merits, then issue preclusion would prevent Warren from raising defenses premised upon that argument. *See In Re Potts*, 142 F.2d 883, 889 (6th Cir. 1944). However, there is no issue preclusion here that requires the conclusion that Warren's defense is time barred due to the unique rules regarding the interplay of defenses and statutes of limitations.

Additionally, I would not rely upon *City of St. Paul v. Evans*, 344 F.3d 1029 (9th Cir. 2003), extra-circuit, federal precedent, to dispose of this Kentucky state-law claim. When sitting in diversity, federal courts must "apply the substantive law of the forum state." *Fox v. Amazon.com, Inc.*, 930 F.3d 415, 422 (6th Cir. 2019). If the state's highest court has spoken on the issue, then we must follow its decision. *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 364 (6th Cir. 2018) (citing *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005)). And when the issue has not been addressed, "a federal court 'must anticipate how the relevant state's highest court would rule' and may rely on the state's intermediate appellate court decisions, along with other persuasive authority, in making this determination." *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) (quoting *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008)). Other sources of authority include "the state's supreme court *dicta*, restatements of law, law review commentaries, and the majority rule among other states." *Garden City Osteopathic Hosp. v. HBE*

*Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995). "Federal courts should be 'extremely cautious about adopting "substantive innovation" in state law.'" *Lindenberg*, 912 F.3d at 364 (quoting *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004)).

The district court relied on *Evans* as another justification for barring Warren's defenses based on its brokerage-license argument, *Heartland*, 2018 WL 2324075, at *6–8, but I believe that transplanting this rule to Kentucky state law is inappropriate. There is no indication that the *Evans* approach applies to this case by its own terms or that the highest court in Kentucky would adopt and then extend the *Evans* rule to apply here. In *Evans*, the Ninth Circuit held that the plaintiff who initiates litigation, thereby "disturb[ing] the equilibrium between the parties," cannot in the same action assert as a defense a claim that is time-barred. 344 F.3d at 1035 (quoting *118 E. 60th Owners v. Bonner Props., Inc.*, 677 F.2d 200, 205 (2d Cir. 1982)). In *Evans*, the plaintiff brought time-barred claims, then one of the defendants counterclaimed, and in response to the counterclaim, the plaintiff raised as defenses "mirror images of its time-barred claims." *Id.* Critically, this all occurred in the same action. In *Bonner*, upon which *Evans* relies, the plaintiff sought affirmative relief through a declaratory judgment claim that was time-barred and also sought a "'defensive' declaration" in the same action, leading the Second Circuit to conclude that a declaratory judgment should be denied. 677 F.3d at 202, 204–06. But the Second Circuit clarified, "[i]f the parties' current disagreement over the enforceability of [the contracts] ever escalates into a lawsuit initiated by the defendants, *plaintiff will be able to assert its defenses*." *Id.* (emphasis added); *cf. Consumer Health Info. Corp. v. Amylin Pharm., Inc.*, 819 F.3d 992, 994–96 (7th Cir. 2016) (holding that a plaintiff could not bring a claim seeking affirmative relief and then simply characterize it as a defense to avoid the time bar because the plaintiff "was using rescission *offensively* in a suit to recover damages"). And finally, in *Davis v. 24 Hour Fitness Worldwide*

*Inc.*, the district court also concluded that the defendant's defenses were time-barred under *Evans* when there was only one action between the parties. 75 F. Supp. 3d 635, 639 (D. Del. 2014) (explaining that the defendant invited the litigation by repudiating the agreement).[3]

Unlike *Evans*, *Bonner*, and *Davis*, upon which Heartland and the district court relied, *see* Appellee Br. at 21–25; *Heartland*, 2018 WL 2324075, at \*6–8 & n.4, we are presented with two separate actions. In the first case, Warren was the plaintiff, and in this second case, Heartland brought suit. Therefore, the case before us is one in which the parties' disagreement over the enforceability of the contract has escalated into a lawsuit to collect payments now due under the contract initiated by the defendants in the first action, Heartland, against the plaintiffs in the first action, Warren. Therefore, Warren should be permitted to assert its defenses here pursuant to *Bonner*, and the *Evans* approach should not bar Warren's defense.

Heartland points no authorities that show that Kentucky would be inclined to import and then extend *Evans* to cases involving two separate actions. In support of its position, Heartland points to only two published federal circuit decisions, *Evans* and *Bonner*, and a single published federal district court decision, *Davis*—none of which speak to Kentucky law. Under Kentucky precedent, the statute of limitations does not preclude a defense to a timely claim nor does the statute of limitations preclude a claim for set-off or recoupment when a new claim has been filed against the defending party. Here, principles of issue preclusion do not apply regarding the sole issue previously decided—the statute of limitations—given the special rules Kentucky follows for defenses. Therefore, we should vacate and remand to the district court for further proceedings.

---

[3] Arguably, *Davis* goes even further than *Evans* and simply contravenes the general rule that defenses, so long as they are not claims for affirmative relief in disguise, are not subject to statutes of limitations. Unlike the parties in *Evans* and *Bonner*, the defendants in *Davis* did not bring any affirmative claims or otherwise seek affirmative relief. *See Davis*, 75 F. Supp. 3d at 639.